# United States Bankruptcy Court
# for the District of Oregon

**Frank R. Alley, III, Judge**
Barbara D. Ivey, Judicial Assistant
Lee D. Brice, Law Clerk



405 East Eighth Ave., Suite 2600
Eugene, Oregon 97401
(541) 431-4055
FAX: (541) 431-4048

February 22, 2010

Mr. James Dietz
243 Holly #2
Medford, OR 97501

Mr. Frank Rote
Hughes, Rote, Brouhard & Thorp, LLP
612 NW 5th Street
Grants Pass, OR 97526

RE: In re Tammy and Clinton Valiquette  09-64167 -fra13

Dear Counsel:

      An adjourned confirmation hearing was held in Medford on January 20, 2010 to consider confirmation of Debtors' Chapter 13 Plan of Reorganization. World Famous Autos (WFA) filed an objection to confirmation and, together with the Debtors, submitted stipulated facts. I took the matter under advisement and allowed the parties to file post-hearing memoranda. I inadvertently entered a letter opinion and order denying confirmation, based on the stipulated facts submitted, prior to receiving the parties' memoranda. I apologize for this oversight. For the reasons that follow, my original letter opinion and order will be vacated.

## FACTS

      On September 26, 2008, Debtor Clinton Valiquette entered into a vehicle buyer's order and a retail instalment contract containing a purchase money agreement with WFA to purchase a 1998 GMC pickup. The total amount financed by WFA of $12,660.69 (at an APR of 24.99%) included the amount still owing on a trade in of $6,056.69 less the trade in value of $2,000, or "negative equity" of $4,056.69. Also included were title and registration fees for the vehicle. On October 6, 2008, the Oregon Department of Motor Vehicles received an application for title and registration for the pickup, with WFA shown as a security holder.

      On April 26, 2009, the Debtor purchased a second vehicle from WFA - a 1991 Honda Accord. A retail instalment contract containing a purchase money agreement was prepared listing the Honda as well as the GMC pickup, previously acquired by the Debtor, as the subjects of the sale.[1] The total

---

[1] Debtors state that WFA insisted that the GMC pickup be "re-purchased" as part of the transaction to purchase the Honda.

amount financed (at 21.99% per annum) is disclosed to be $17,109.50, and includes title and registration fees for both vehicles.

After filing bankruptcy, Debtors filed a Chapter 13 Plan which proposed to "cram down" WFS's secured claim to the value of the collateral: GMC = $3,000, Honda = $1,800. WFA objects that its secured claim cannot be crammed down pursuant to 11 U.S.C. § 1325(a)(9), because both vehicles were acquired on April 26, 2009, within 910 days of the bankruptcy petition date of August 2, 2009.

## ISSUES PRESENTED

1) Is the "negative equity" included in the "original" purchase of the GMC subject to the anti-cram-down provision of Code § 1325(a)(9)?;

2) What is the effect of the "re-purchase" of the GMC?; and

3) After the "re-purchase," what part of the new loan is secured by a Purchase Money Security Interest (PMSI)?

## DISCUSSION

The so called "Hanging Paragraph" of Bankruptcy Code § 1325(a)(9) provides:

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

The effect of the preceding is that a claim meeting the requirements of the "Hanging Paragraph" may not be bifurcated into secured and unsecured components in a plan of reorganization and must be paid in full over the life of the chapter 13 plan. See In re Robert and Julie Henry, No. 06-61477-fra13 (Bankr. D.Or. 10/16/06, unpublished).

### Negative Equity

The controlling case on this issue is In re Penrod, 392 B.R. 835 (9th Cir. BAP 2008) which held that financed "negative equity" does not give rise to a purchase money security interest in the new vehicle for purposes of Code § 1325(a)(9). See also, In re Johnson, 380 B.R. 236 (Bankr. D. Or. 2007)(applying Oregon law). Both opinions adopted the "dual status rule," which recognizes that the secured obligation in the newly acquired vehicle may be fractionalized, with one part being secured by a purchase money security interest and another part secured by a standard security interest.

### Effect of the Re-Purchase of the GMC

WFA's position is that both vehicles were purchased on April 26, 2009 as part of a package deal, with no allocation made between the two vehicles or to any "negative equity." As such, its entire security interest in the two vehicles constitutes WFA'S purchase money security interest. The Debtors

Messrs. Dietz and Rote
February 22, 2010
Page - 3

counter that the part of the April 26 financing allocable to the sale of the GMC was not made to acquire the GMC, which had already been acquired by the Debtors on September 26, and so does not give rise to a purchase money security interest. The only purchase money security interest held by WFA, according to the Debtors, is in the Honda.

If I were to adopt the reasoning of WFA and find that the purchase of the GMC did not occur until April 26, 2009, I would have to disregard the transaction which occurred on September 26, 2008 by which the Debtors actually acquired ownership of the vehicle. The "re-sale" of the GMC on April 26 was actually a refinance of the original note, effectuated by the cancellation of the September 26, 2008 note and security agreement and the substitution of a new retail instalment contract and security agreement which also included the Honda. To find otherwise, would be to unreasonably elevate form over substance.

The question then becomes: what is the effect of the refinance of the GMC loan on the purchase money status of that part of the original loan not used to finance negative equity? The bankruptcy court in In re Johnson, 380 B.R. at 249, stated that Oregon's Revised Article 9 adopted the dual status rule for *non*-consumer transactions, O.R.S. § 79.0103(6)(1), but left whether to apply the rule to consumer transactions to the discretion of the courts. The dual status rule in Oregon, for non-consumer transactions, provides that "a PMSI does not lose its status even if the purchase money obligation is renewed, refinanced, consolidated, or restructured." Id. The Johnson court determined, given the language and purpose of the "Hanging Paragraph," that the dual status rule should be applied to the consumer transaction before it to permit PMSI status to that part of a loan used to acquire collateral subject to the Hanging Paragraph and standard security interest status to that part financing negative equity. Given those same considerations, I find that the PMSI status of an obligation secured by collateral subject to the Hanging Paragraph is not lost if it is renewed, refinanced, consolidated, or restructured.[2]

Status of the April 26, 2009 Obligation
Debtors do not contest that the part of the April 26 loan used to finance the purchase of the Honda is secured by a PMSI. The remainder of the loan, allocable to the refinance of the September 26, 2008 loan, exclusive of the negative equity, is also secured by a PMSI in the GMC and may not be crammed down to the value of the collateral.

Other Objections to Confirmation
WFA also objected to the Plan provision by which Debtors' attorney fees would be paid through the Plan in full prior to any payments being made to WFA. WFA argues in part that it would lack adequate protection if it were not paid during the first five months of the Plan. Given the fact that its claim allocable to the purchase money security interests in the GMC and the Honda vehicles must be paid in full and that the collateral securing the claim is worth less than $6,000, pursuant to exhibits provided by the parties, I cannot find that WFA's claim is not adequately protected. However, it must

---

[2] Because both the September 26, 2008 and April 26, 2009 loans were made within 910 days of the bankruptcy petition date, I do not reach the issue that may occur when the original loan date occurs outside the 910-day period and the loan used to refinance the original loan occurs within the 910-day period.

be noted that this stepped-payment approach, if objected to by a creditor, violates Code § 1325(a)(5)(B)(iii), which requires that periodic payments made in payment of a claim secured by personal property be made in "equal monthly amounts." <u>In re Sanchez</u>, 384 B.R. 574 (Bankr. D. Or. 2008).

## CONCLUSION

For the reasons given, confirmation of the Debtors' plan is denied and an order will be entered providing 28 days for Debtors to file an amended plan consistent with my remarks made herein. I leave it to the parties to calculate the amount of WFA's claim subject to a PMSI, which must be paid in full through the Chapter 13 Plan.

Very truly yours,

FRANK R. ALLEY, III
Bankruptcy Judge